**FILED**

APR 1 8 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLAUDETTE KNOTT,

       Plaintiff,             No. CIV S-02-1105  JFM

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.       AMENDED ORDER[1]
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for divorced spouse's benefits as a deemed spouse under § 216(h)(1) of the Social Security Act ("Act").  The case is before the undersigned pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, the court will grant plaintiff's motion for summary judgment, remand the action to the Commissioner for an award of benefits, and deny the Commissioner's cross motion for summary judgment.

      In a decision dated August 16, 2000, the ALJ determined plaintiff was not entitled to divorced spouse's benefits.  The ALJ's decision became the final decision of the

---

[1] This order is issued to correct a typographical error contained in the order clause of this court's April 15, 2003 order, changing "surviving spouse benefits" in paragraph #3 to read "divorced spouse benefits."

1

1   Commissioner when the Appeals Council denied plaintiff's request for review on March 23,

2   2002. The ALJ found that plaintiff filed an application for divorced wife's benefits on October

3   11, 1996, that plaintiff does not meet the ten-year duration of marriage requirement because her

4   marriage to the wage earner was void; and that plaintiff is not the divorced wife of the wage

5   earner within the meaning of the Social Security Act and regulations. (Administrative Transcript

6   ("Tr.") at 14.) Plaintiff contends that she was a deemed or putative spouse under California law

7   and the Social Security Act and Regulations, and thus is entitled to divorced spouse benefits. 42

8   U.S.C. § 216(h); 20 CFR §§ 404.331; 404.345; 404.346.

9         The court reviews the Commissioner's decision to determine whether (1) it is

10  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

11  the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988), citing

12  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988).

13  Substantial evidence means more than a mere scintilla of evidence, but it is less than a

14  preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996), citing Sorensen v.

15  Weinberger, 514 F.2d 1112, 1119 (n.10) (9th Cir. 1975). "It means such evidence as a

16  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

17  U.S. 389, 402 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

18  The record as a whole must be considered. Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

19  1986).

20         In the instant case, the facts are undisputed; the sole issue here is a question of

21  law: whether plaintiff is entitled to receive divorced spouse's benefits.

22         Plaintiff's eligibility for wife's benefits is governed by 42 U.S.C. § 402, which

23  provides that a wife or divorced wife of an individual entitled to benefits shall also be entitled to

24  those benefits if she:

25         (A) has filed application for wife's insurance benefits;

26         (B) has attained age 62 . . . ,

1        (C)  in the case of a divorced wife, is not married, and

2        (D)  is not entitled to old-age or disability insurance benefits. . . .

3   Id.  Defendant argues that plaintiff is not a "divorced wife" for purposes of the Social Security

4   Act.  Title 42 U.S.C. § 416(d) provides additional definitions:

5        (d)  Divorced spouses; divorce

6            (1)  The term "divorced wife" means a woman divorced from an

7   individual, but only if she had been married to such individual for a period of 10 years

8   immediately before the date the divorce became effective.

9            . . .

10           (8)  The terms "divorce" and "divorced" refer to a divorce a vinculo

11  matrimonii.

12  42 U.S.C. § 416(d).

13          Under 20 C.F.R. § 404.331, an applicant is entitled to wife's benefits as a

14  divorced wife of an insured person if the applicant was married to the insured under State law as

15  described in § 404.345 or was deemed to be validly married as described in § 404.346.  Section

16  404.345 provides:

17          To decide your relationship as the insured's wife or husband, we
                look to the laws of the State where the insured had a permanent
18          home when you applied for wife's or husband's benefits. . . .  If
                you and the insured were validly married under State law at the
19          time you apply for wife's or husband's benefits or at the time the
                insured died if you apply for widow's, widower's, mother's, or
20          father's benefits, the relationship requirement will be met.

21  Id.

22          Langston Knott was domiciled in California at the time plaintiff discovered his

23  prior marriage and at the time she filed the instant action.  Under California law, a marriage is

24  void or voidable if entered into by a person who was not divorced from his previous spouse.  Cal.

25  Fam. Code §§ 2201, 2210.  The Sacramento County Superior Court recognized that plaintiff and

26  /////

3

1    Langston Knott had not been validly married under California state law, and granted plaintiff a
2    final judgment of nullity on May 27, 1980.  (Tr. 46.)

3            However, one can be a putative spouse under California law if one spouse
4    believed, in good faith, that he or she was a party to a valid marriage.  Vallera v. Vallera, 21
5    Cal.2d 681 (1943); Miller v. Johnson, 214 Cal.App.2d 123 (1963).  Once a putative spouse learns
6    that her marriage is invalid, she loses her protected status with respect to subsequently acquired
7    property.  Lazzarevich v. Lazzarevich, 88 Cal.App.2d 708, 718 (1948).  Given plaintiff's good
8    faith belief in the validity of her marriage, this court finds that plaintiff was a putative spouse of
9    Langston Knott.

10           Defendant makes much of the distinction between void and voidable marriages.
11   However, under California law, no distinction is drawn between void and voidable marriages in
12   the context of putative spouses.  Good faith parties to either void or voidable marriages are
13   putative spouses under California law.  See Estate of Leslie, 37 Cal.3d 186, 191, n.4 (1984).

14           California law employs the putative spouse doctrine generously.  A surviving
15   putative spouse has been held to be a surviving spouse within the meaning of Government Code
16   § 21364.  Adduddell v. Board of Administration, 8 Cal. App.3d 243 (1970).  Government Code
17   § 21364 entitles a surviving spouse to special death benefits under the Public Employees'
18   Retirement Law.  The court in Adduddell found it would be "illogical and inconsistent" for the
19   legislature to intend a putative spouse is a surviving spouse under § 201, but not a surviving
20   spouse under Government Code § 21364.  Adduddell, 8 Cal.App.3d at 249-50.

21           A surviving putative spouse has also been held to be a surviving widow within the
22   meaning of former Labor Code § 4702 (Stats. 1969, ch. 65, section 1, at 187), and thus was
23   entitled to recover workers' compensation death benefits.  Brennfleck v. Workmen's Comp. App.
24   Bd., 3 Cal.App.3d 666 (1970); see also Neureither v. Workmen's Comp. App. Bd., 15
25   Cal.App.3d 429, 433 (1971).
26   /////

4

1    Putative spouses have also been awarded spousal benefits under the Social

2    Security Act. Slobodnik v. Bowen, Unempl. Ins. Rep. (CCH) ¶ 14194A, 1988 WL 252076 (C.D.

3    Cal.); Fontana v. Callahan, 999 F.Supp. 304 (E.D. NY 1998).  In Slobodnik, a 67-year-old

4    applicant who was married to an insured person for thirteen years prior to the annulment of their

5    marriage was a "divorced" spouse, for the purpose of entitlement to benefits as a divorced

6    spouse, notwithstanding that the insured person was of unsound mind at the time of the marriage,

7    so that no valid marriage ever existed, and that under the law of California, the applicant's

8    domicile during her marriage to the insured person, the annulment related back to erase the

9    marriage from the outset. Slobodnik, 1988 WL 252076.  The Slobodnik court reasoned that

10   Congress had intended, in providing benefits to divorced spouses, to protect persons such as the

11   applicant, who spent a good part of their lives in marriages that were dissolved when they were

12   far along in years.  Id.

13   In Fontana, the applicant for wife's insurance benefits as a former spouse of a

14   recipient of disability insurance benefits under the Social Security Act had been in a deemed

15   valid marriage with recipient, and thus could receive benefits, even though claimant's marriage to

16   recipient had been annulled because recipient's first wife had not received personal service in

17   connection with a Mexican divorce, rendering the divorce invalid.  Fontana, 999 F.Supp 304.

18   The Fontana court reasoned that the applicant's marriage would have been valid but for

19   recipient's prior marriage, and claimant had gone through the marriage ceremony in good faith.

20   Fontana v. Callahan, 999 F. Supp. 304, 57 Soc. Sec. Rep. Serv. 116 (E.D.N.Y. 1998).

21   Putative surviving spouses have also been awarded spousal benefits under the

22   Social Security Act. Aubrey v. Folsom, 151 F.Supp. 836, 840 (N.D. Cal. 1957) and Speedling v.

23   Hobby, 132 F.Supp. 833, 836 (N.D. Cal. 1955).  In Speedling, the court held that a putative

24   widower satisfied the requirements of § 416(h)(1) where the deceased wage earner left only

25   quasi-community property in his estate but did not answer whether such putative widower would

26   qualify as to a deceased wage earner's separate property.  Speedling, 132 F.Supp. at 836.  The

1  Aubrey court resolved this in 1957 by finding that, "irrespective of the nature of the property in
2  the estate of the deceased wage earner, the surviving 'putative' spouse in California qualifies as a
3  widow under the provisions of section 416(h)(1), and thus . . . [was] entitled to 'mother's
4  insurance benefits' under section 402(g)." Aubrey, 151 F.Supp. at 840.  This holding was further
5  confirmed by the California Supreme Court in 1984.  Estate of Leslie, 37 Cal.3d 186 (1984) (a
6  surviving putative spouse is entitled to succeed to a share of the decedent's separate property as
7  well as the quasi-marital property.)

8          Moreover, putative spouses have been awarded spousal benefits under the civil
9  service retirement statute (5 U.S.C. § 8341), Brown v. Devine, 574 F.Supp. 790, 792 (N.D. Cal.
10  1983), and under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901,
11  et seq.), Powell v. Rogers, 496 F.2d 1248, 1250 (9th Cir. 1974), cert. den., 419 U.S. 1032 and
12  Holland America Insurance Company v. Rogers, 313 F.Supp. 314, 317-18 (N.D. Cal. 1970).  In
13  the instant case, plaintiff was awarded a portion of Langston Knott's civil service retirement
14  benefit as the United States Office of Personnel Management found plaintiff was entitled to her
15  marital share of her former spouse's retirement benefits.  (Tr. 91.)

16          However, even if plaintiff cannot establish a valid marriage under state law, she
17  may still be entitled to wife's benefits based upon a "deemed valid marriage."  Under 20 C.F.R.
18  § 404.346, an applicant is deemed to have been a wife if:

19          in good faith, you went through a marriage ceremony with the
        insured that would have resulted in a valid marriage except for a
20          legal impediment.  A legal impediment includes only an
        impediment which results because a previous marriage had not
21          ended at the time of the ceremony or because there was a defect in
        the procedure followed in connection with the intended marriage. .
22          . .  Good faith means that at the time of the ceremony you did not
        know that a legal impediment existed, or if you did know, you
23          thought that it would not prevent a valid marriage.

24  Id.

25          This provision tracks the language of 42 U.S.C. § 416(h)(1)(B)(i), which provides
26  that:

6

1    [when an] applicant is not the wife, divorced wife, widow,
     surviving divorced wife, husband, divorced husband, widower, or
2    surviving divorced husband of [the insured], but it is established . .
     . that such applicant in good faith went through a marriage
3    ceremony with such individual resulting in a purported marriage
     between them which, but for a legal impediment not known to the
4    applicant at the time of such ceremony, would have been a valid
     marriage, then . . . such purported marriage shall be deemed to be a
5    valid marriage.

6    Id.  Plaintiff's marriage to Langston Knott would have been valid but for his prior marriage to

7    Jacquelyn L. Allen.  (Tr. 55, 51.)  The Administrative Law Judge determined plaintiff went

8    through a marriage ceremony with Langston Knott in good faith, and the evidence in the record

9    supports this conclusion.  (Tr. 51.)

10           Section 416(h)(1)(B)(i) of Title 42 also provides that:

11   [I]n the case of any person who would be deemed . . . a wife,
     widow, husband, or widower of the insured individual, such
12   marriage shall not be deemed to be a valid marriage unless the
     applicant and the insured individual were living in the same
13   household at the time of the death of the insured individual or (if
     the insured individual is living) at the time the applicant files the
14   application.

15   Id.  Similarly, 20 C.F.R. § 404.346 states that "[t]o be entitled to benefits as a wife, husband,

16   widow, or widower as the result of a deemed valid marriage, you and the insured must have been

17   living in the same household. . . at the time you apply for benefits."  Id.  Defendant argues that

18   these provisions require plaintiff to have been living with Langston Knott at the time she applied

19   for benefits.

20           That argument is without merit.  The provisions relied on by defendant apply only

21   to applicants who would be entitled to benefits as a "wife, husband, widow, or widower," not as

22   a divorced spouse.  Both Title 42 and the C.F.R. distinguish applicants who are entitled to wife's

23   or husband's benefits as a divorced spouse from applicants who are entitled to wife's, husband's,

24   widow's or widower's benefits.  See 20 C.F.R. § 404.330--404.335; 42 U.S.C. § 416(a)-(h).  A

25   divorced spouse need not reside with her ex-husband at the time she applies for benefits in order

26   to receive benefits.

7

1    Defendant further argues that plaintiff is not a divorced spouse because she was

2  not granted a proper divorce, but only an annulment.  A divorce is defined in 42 U.S.C. § 416 as

3  the "legal dissolution of a marriage by a court."  Black's Law Dictionary 494 (7th ed. 1999.)  The

4  annulment of plaintiff's marriage to Langston Knott restored the parties to the status of

5  unmarried persons.  Cal. Fam. Code § 2212(a).  Under California law, a judgment of nullity of

6  marriage is conclusive only as to the parties to the proceeding and those claiming under them.

7  Cal. Fam. Code § 2212(b).

8    The Code of Federal Regulations considers the situation of an ex-spouse from a

9  deemed valid marriage that is void "because a previous marriage had not ended at the time of the

10  ceremony."  20 C.F.R. § 404.346.  It further provides that such a person can qualify for benefits

11  as a divorced spouse.  20 C.F.R. § 404.331(a)(1).  Under California law, a union void because a

12  previous marriage had not ended at the time of the ceremony is dissolved through annulment.

13  Goff v. Goff, 52 Cal.App.2d  23 (1942); See, also Cal. Family Code §§ 2201, 2210, 2212; Estate

14  of Vargas, 36 Cal.App.3d 714 (1974).  Defendant's definition of divorce would prohibit a spouse

15  divorced from a deemed marriage in California from applying for divorced wife's benefits, while

16  allowing those benefits to an applicant whose former spouse resides in a state that dissolves

17  bigamous unions through divorce rather than annulment.  Defendant's reading eviscerates the

18  statute and elevates form over substance.  "Whether the decree issued by the State court is called

19  a divorce or annulment under State law is irrelevant to the economic situation faced by the

20  individual where the decree has the legal effect of terminating the marriage."  Slobodnik, 1988

21  WL 252076.

22    Defendant cites the Program Operations Manual ("POMS") GN 00305.085 for the

23  proposition that plaintiff is excluded from consideration as a divorced spouse.  (Deft's October

24  31, 2002 Mem. Ps & As at 7.)  Only the Social Security Act, the regulations thereunder and

25  applicable case law are binding on this court.  POMS is an internal Social Security

26  Administration manual, for the internal use of Social Security Administration employees, and has

8

no legal force and does not bind the Social Security Administration.  <u>Schweiker v. Hansen</u>, 450 U.S. 785, 789 (1981) (per curiam).  Although it may provide persuasive authority in some instances, this court does not find it persuasive here.  The statement that "[d]ivorced putative spouse's benefits cannot be paid based on an annulment or separation," contained in the general section pertaining to divorced spouses, is trumped by the federal regulation requiring this determination to be made under state law.  Under California law, as noted above, plaintiff is entitled to putative spouse status and thus entitled to divorced spouse benefits either as a putative spouse or via her deemed valid marriage.

Defendant further argues that plaintiff does not qualify under the California Policy found in section C because she does not fall within the narrow exception for illiterate individuals ignorant of California laws and customs (POMS GN 00305.085 (C)(2)).  However, a close reading of section C(1) reveals that the primary change that occurred on February 4, 1983 was to discontinue the consideration of common-law marriages.  In addition, defendant reads the new section too narrowly.  The pertinent passage reads:  "Effective for claims finally adjudicated on or after 2/4/83, a putative marriage can be established only on the basis of an invalid ceremonial marriage with one very limited exception."  POMS GN 00305.085 (C)(1).  This should be read as there are two ways a putative marriage can be established:  by an invalid ceremonial marriage or by the very limited exception.  Plaintiff's case falls within the "invalid ceremonial marriage" portion -- her ceremonial marriage to Langston Knott was invalid because Mr. Knott had not dissolved his prior marriage to Jacquelyn L. Allen.

Defendant contends that her position is consistent with circuit authority.  <u>Folsom v. Pearsall</u>, 245 F.2d 562 (9th Cir. 1957) (Reinstatement of widow's benefits ordered for widow whose benefits were terminated upon her remarriage because subsequent marriage was annulled, meaning no valid marriage ever existed.)  However, in that opinion, the court stated:  "This doctrine of 'relation back' to declare the marriage void from the beginning is not applied by the California courts in every instance."  <u>Folsom</u>, 245 F.2d at 565.  "The test for determining the

1    applicability of the doctrine as applied to voidable marriages is whether it effects a result which

2    conforms to the sanctions of sound policy and justice as between the immediate parties thereto,

3    their property rights acquired during that marriage and the rights of their offspring." Sefton v.

4    Sefton, 45 Cal.2d 872, 875 (1955)("[I]mproper to reinstate alimony obligation of a divorced

5    husband following annulment of a marriage by the divorced wife made subsequent to the

6    divorce, on the theory that after the celebration of marriage the divorced husband . . . was then

7    entitled to recommit his assets previously chargeable to alimony." Folsom, 245 at 565, quoting

8    Sefton, 45 Cal.2d at 876-77.))  It is unlikely that California courts would choose to declare this

9    marriage void from the beginning for purposes of depriving plaintiff her rights to social security

10   insurance benefits as a deemed or putative spouse.

11           The conclusion that an annulment is equivalent to a divorce for purposes of the

12   Social Security Act is supported by 20 C.F.R. § 404.728, which describes how an applicant must

13   prove that her marriage has ended. Id.  The Code of Federal Regulations considers "a copy of the

14   decree of . . . annulment" evidence that a marriage has ended for the purposes of determining

15   whether an applicant is entitled to divorced spouse's benefits. Id.

16           Finally, the legislative history of the Social Security Act supports this court's

17   conclusion that a deemed wife can be entitled to wife's benefits as a divorced spouse.  For 22

18   years, plaintiff believed herself to be married to Langston Knott.  During that time she gave birth

19   to four of his children.  (Tr. 12.)  The 1965 amendments to the Social Security Act, Pub.L. 89-97,

20   79 Stat. 375-79, first permitted divorced women to receive wife's and widow's benefits out of

21   concern for women in plaintiff's position:

22           It is not uncommon for a marriage to end in divorce after many
             years, when the wife is too old to build up a substantial social
23           security earnings record even if she can find a job. . . .  These
             changes would provide protection mainly for women who have
24           spent their lives in marriages that are dissolved when they are far
             along in years – especially housewives who have not been able to
25           work and earn social security benefit protection of their own –
             from loss of benefit rights.
26

1    1965 U.S.C.C.A.N. 1943, 2047-48.  In 1990 Congress amended 42 U.S.C. § 416 to permit a

2    narrow category of "deemed" spouses--those who went through a marriage ceremony in good

3    faith which, but for a legal impediment not known to the applicant, would have been valid – to

4    collect benefits as if they were legal spouses.  Pub.L. 101-508, § 5119, 104 Stat. 1388, 1388-280.

5    House Conference Report No. 101-964 explained that the law extends to a deemed divorced

6    spouse: "A deemed spouse who divorced the worker would be eligible for benefits on the same

7    basis as if he or she were a divorced legal spouse."  1990 U.S.C.C.A.N. 2374, 2650.  Plaintiff is

8    just such a spouse.

9                                                    Remand

10            The decision whether to remand a case for additional evidence or simply to award

11   benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

12   1990).  In general, the court will consider factors such as the completeness of the record, the

13   weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay.

14   Social Security Law and Practice, § 55.60 (1987).  In the instant case, all three factors weigh in

15   favor of an award of benefits.  First, the record is complete.  Plaintiff has achieved retirement

16   age.  Second, plaintiff has submitted substantial evidence that demonstrates she was a good faith,

17   putative spouse, who took the appropriate legal steps once her ex-husband's bigamy came to

18   light.  Third, plaintiff has already waited over six years, is now 68 years old, and there is no

19   significant reason to further extend this case.  Plaintiff is entitled to finality.  Where, as here, the

20   court determines that substantial evidence in the record as a whole supports a finding that

21   plaintiff is entitled to divorced spouse's benefits within the meaning of the Act, the court need

22   not remand the case to the ALJ for further proceedings.  See Gallant v. Heckler, 753 F.2d 1450,

23   1457 (9th Cir. 1984).  Accordingly, the court finds, based on the testimony of the plaintiff and

24   the documentary evidence contained in the administrative transcript, plaintiff is entitled to

25   divorced spouse benefits because during her 22 year marriage she had a good faith belief that her

26   marriage was valid, and there is no need to remand the case for additional substantive findings.

                                                    11

1          The ALJ's decision is based on legal error.  Accordingly, IT IS HEREBY

2   ORDERED that:

3          1.  Plaintiff's motion for summary judgment is granted,

4          2.  The Commissioner's cross motion for summary judgment is denied; and

5          3.  This action is remanded to the Commissioner with directions to award plaintiff

6   divorced spouse benefits.

7   DATED:  April *18*, 2003.

8

9                                           UNITED STATES MAGISTRATE JUDGE

10   /001; knott.ss2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

United States District Court
for the
Eastern District of California
April 18, 2003


* * CERTIFICATE OF SERVICE * *


2:02-cv-01105


Knott

    v.

Social Security

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  April 18, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Joan Allison Jennings          CF/JFM
        Law Office of Joan Jennings
        2740 Fulton Court
        Sacramento, CA  95814

        Michael R Power
        United States Attorney
        501 I Street
        Suite 10-100
        Sacramento, CA  95814


                                    Jack L. Wagner, Clerk

                                BY:
                                    Deputy Clerk